1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11

12   JAMES WEAVER, JR., on behalf         No.  2:20-cv-00990-JAM-EFB
     of himself individually and
13   as guardian for his two
     children, JW III, a minor
14   child and LW, a minor child      **ORDER GRANTING IN PART AND**
     and JAMES WEAVER SENIOR, on      **DENYING IN PART MOTION TO**
15   behalf of his granddaughter,     **DISMISS AND DENYING MOTION TO**
     JW a minor child,                **STRIKE**
16
                 Plaintiffs,
17
          v.
18
     CITY OF STOCKTON, STOCKTON
19   POLICE DEPARTMENT, KEVIN
     HACHLER, ERIC JONES, and DOES
20   1 to 50,

21               Defendants.

22

23        On May 25, 2019, an off-duty Stockton Police Department

24   Officer, Kevin Hachler ("Officer Hachler"), arrested James Weaver

25   ("Weaver"), a Black man, at gunpoint while in the car with his

26   two children and niece (collectively "the children").  Weaver

27   then filed suit, on behalf of himself, as guardian for his two

28   children, and with his father, James Weaver, Senior, as guardian

                                    1

1    for his niece (collectively "Plaintiffs").  Plaintiffs are suing

2    Officer Hachler, the Stockton Police Department, its Police

3    Chief, and the City of Stockton (collectively "Defendants").

4    Compl., ECF No. 1.

5        Defendants now move to strike portions of Plaintiffs'

6    Complaint, Mot. to Strike, ECF No. 5-1, and to dismiss

7    Plaintiffs' claims, Mot. to Dismiss ("MTD"), ECF No. 4-1.

8    Plaintiffs oppose both motions.  See Opp'n to Mot. to Strike, ECF

9    No. 8; see also Opp'n to MTD, ECF No. 7.  For the reasons

10   asserted below, the Court GRANTS in part and DENIES in part

11   Defendants' motion to dismiss and DENIES Defendants' motion to

12   strike.[1]

13

14       I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

15       On May 25, 2019, Weaver drove from his home in Reno, Nevada

16   to the City of Stockton, with his two children and young niece.

17   Compl. ¶ 14.  Weaver towed a trailer, with the intent to buy a

18   car in Stockton and tow it back home to Reno.  Id.

19       While on the highway, a car started to follow them.  Id.

20   This car drove at an unsafe distance, unsafe speed, and unsafe

21   manner.  Id.  Weaver exited the highway into the City of Stockton

22   and the car followed.  Id.  The driver then ran out of the car

23   and pulled out his gun.  Id.  The driver turned out to be Officer

24   Hachler, who was off-duty and not in uniform.  Id.  Officer

25   Hachler pointed his gun at Weaver, assaulted him physically and

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for August 25, 2020.

                                    2

1   threw him to the ground, all in the presence of the three

2   children.  Id.  Because Officer Hachler did not announce that he

3   was a police officer, Weaver thought he was being confronted by a

4   violent person that was going to rob him and shoot him.  Id. at

5   ¶ 15.

6        Officer Hachler then summoned other members of the Stockton

7   Police Department to aid in arresting Weaver.  Id.  Officer

8   Hachler falsely accused Weaver of having assaulted him with a

9   deadly weapon in violation of California Penal Code § 245 and of

10  driving recklessly.  Id.  Weaver was then taken into custody at

11  the San Joaquin County Sheriff's Department.  Id.

12       Weaver's two children and niece were also detained and taken

13  into custody at the San Joaquin County Sheriff's Department.  Id.

14  ¶ 16.  The children were held until Weaver's wife drove the 200

15  miles from Reno to Stockton, to retrieve them.  Id.

16   Because of the arrest, Weaver's car and trailer were impounded

17  and towed.  Id. ¶ 17.  He was also jailed, required to post a

18  large money bail to be released, and forced to travel to the City

19  of Stockton to attend Court.  Id.  However, the San Joaquin

20  County District Attorney declined to file any charges against

21  him.  Id.

22   Close to a year later, Weaver filed this suit against

23  Defendants alleging violations of his and the children's civil

24  and constitutional rights.  See Compl.  Specifically, Plaintiffs'

25  allege the following six causes of action against Defendants:

26  (1) violation of the Fourth Amendment to the United States

27  Constitution, (2) violation of the Fourteenth Amendment to the

28  United States Constitution, (3) interference with Right of Equal

1  Protection and Due Process under Article I, § 7 of the California

2  Constitution, (4) False Arrest and False Imprisonment,

3  (5) violation of the Bane Act, and (6) Negligence.  See Compl.

4  Defendants now seek to dismiss Plaintiffs' claims.[2]  MTD at 1.

5  Defendants also seek to strike paragraph 25 and paragraph 27 in

6  Plaintiffs' Complaint.

7

8                    II.  OPINION

9      A.  Motion to Strike

10         1.  Legal Standard

11     Federal Rule of Civil Procedure 12(f) permits a court to

12  "strike from a pleading . . . any redundant, immaterial,

13  impertinent, or scandalous matter."  Motions to strike are

14  "disfavored"; they "should not be granted unless the matter to

15  be stricken clearly could have no possible bearing on the

16  subject of the litigation."  Platte Anchor Bolt, Inc. v. IHI,

17  Inc., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citation

18  omitted).  In ruling on a 12(f) motion, the Court must view the

19  pleadings in the light most favorable to the nonmoving party.

20  Id.

21         2.  Analysis

22     Defendants allege that paragraphs 25 and 27 in Plaintiffs'

23  Complaint "should be stricken for disclosing information learned

24  about Officer Hachler in violation of a protective order issued

25  [in a different matter]."  Mot. to Strike at 5.  Paragraph 25

26  ───────────────────────

27  [2] The Court does not address the fourth, fifth, and sixth claims,
    because Defendants' arguments to dismiss those claims went beyond
    the Court's page limitations.  Order RE Filing Requirements, ECF

28  No. 3-2, at 1.

includes the following information: (1) Officer Hachler's year of employment, (2) that he has been the subject of citizens' complaints, and (3) the use of force Officer Hachler engaged in against a "young Hispanic male" that is currently pending suit in Duarte et al., v. City of Stockton, 2:19-cv-00007-MCE-CKD (henceforth "Duarte Case"), in front of a different Judge within this district.  Compl. ¶ 25.  Paragraph 27 alleges that the City of Stockton, the Stockton Police Department, and its Police Chief, ratified and approved Officer Hachler's actions by: (1) not considering pointing a gun to be use of force, (2) failing to find that Officer Hachler's use of force against Weaver were against their policies, (3) failing to terminate or reprimand Officer Hachler, and (4) failing to enact new policies that would prevent use of force in the future.  Id. ¶ 27.

Plaintiffs' are currently represented by the same attorney representing the plaintiff in the Duarte Case; Defendants are also represented by the same counsel in both cases.  Id. Defendants believe that Plaintiffs obtained the information alleged in those two paragraphs through their counsel, in violation of a stipulated protective order in the Duarte Case. Id.

The protective order encompasses "information where public disclosure is likely to result in particularized harm, or where public disclosure would violate privacy interests recognized by law."  Mot. to Strike, Exh. A, Protective Order, ECF No. 5-2. The order lists the following as examples of confidential information: (a) personnel file records of any peace officer; (b) medical records; (c) social security numbers and similar

1   sensitive identifying information.  Id.  Although not an

2   exhaustive list, the information at issue here is unlike those

3   examples.

4       As Plaintiffs contend, the information in paragraphs 25 and

5   27 is "general and not specific, and [does] not contain any

6   personal or specific information."  Opp'n to Mot. to Strike at

7   2.  Moreover, Plaintiffs allege they obtained the information

8   through independent sources.  Id. at 2-3.  Indeed, a quick

9   internet search on this matter reveals Officer Hachler's use of

10  force against Mr. Duarte.  See Ken Mashinchi, *Complaint Alleges*

11  *Racial Profiling, Assault in Stockton Cinco de Mayo Sideshow*

12  *Arrests*, Fox 40 (Aug. 20, 2018), https://fox40.com/news/local-

13  news/complaint-alleges-racial-profiling-assault-in-stockton-

14  cinco-de-mayo-sideshow-arrests/.  Lastly, paragraph 27 does not

15  involve any information regarding the Duarte Case—it describes

16  only the alleged ratification of Officer Hachler's use of force

17  against Weaver.  See Compl. ¶ 27.  Therefore, the Court finds

18  neither paragraph is in violation of the Duarte protective

19  order.[3]

20      Defendants also argue the allegations in paragraph 25 and

21  27 should be stricken as "scandalous."  Mot. to Strike at 5.

22  "Allegations may be stricken as scandalous if the matter bears

23

24  [3] Plaintiffs argue this motion is not ripe for adjudication
    because the issue of what the protective order encompasses as
25  confidential is currently under submission before Magistrate
    Judge Delaney.  Opp'n to Mot. to Strike at 1.  However, the Court
26  finds that holding, even if not yet issued, is not binding on
    this Court.  See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d
27  970, 973 (9th Cir. 2010)("[W]hether to grant a motion to strike
    lies within the sound discretion of the district court.").
28

1  no possible relation to the controversy or may cause the

2  objecting party prejudice." Wilkerson v. Butler, 229 F.R.D.

3  166, 170(E.D. Cal. 2005).  Both paragraphs clearly relate to the

4  controversy at issue.  And neither paragraph prejudices Officer

5  Hachler.  Although Defendants cite cases to support the

6  contrary, those cases are distinguishable.  See Reply to Mot. to

7  Strike, ECF No. 11, at 2-3.  In Blodgett v. Allstate Ins. Co.,

8  for instance, the court struck the allegations as scandalous

9  because it violated federal and state evidentiary rules.  No.

10  2:11-CV-02408-MCE, 2012 WL 2377031, at *6 (E.D. Cal. June 22,

11  2012).  In the other two cases Defendants rely on, the courts

12  found the allegations to be scandalous because they used

13  inflammatory language.  See Schultz v. Braga, 290 F. Supp. 2d

14  637, 654-55 (D. Md. 2003), aff'd, 455 F.3d 470 (4th Cir. 2006)

15  ("[P]laintiffs have chosen to use inflammatory language . . .

16  [defendant's] motion to strike will be granted."); see also,

17  Rosembert v. Borough of E. Lansdowne, 14 F. Supp. 3d 631, 649

18  (E.D. Pa. 2014) (District Court striking as scandalous matter

19  allegations referring to the officers as "lying," "corrupt," and

20  "motivated by their greed and racist desires.").  In contrast,

21  the allegations at issue here are neither barred by evidentiary

22  law nor do they use inflammatory language.  The Court therefore

23  does not find these allegations to be scandalous and DENIES

24  Defendants' motion to strike.

25      B.   Motion to Dismiss

26           1.   Legal Standard

27      Federal Rule of Civil Procedure 8(a)(2) requires "a short

28  and plain statement of the claim showing that the pleader is

7

entitled to relief." A suit must be dismissed if the plaintiff fails to "state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twmobly, 550 U.S. 544, 570 (2007). This plausibility standard requires "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"At this stage, the Court 'must accept as true all of the allegations contained in a complaint.'" Id. But it need not "accept as true a legal conclusion couched as a factual allegation." Id. In dismissals for failure to state a claim, leave to amend the pleading should be granted, unless "it is clear that the complaint could not be saved by any amendment." Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003).

　　　　2.　Analysis

　　　　　　a.　Fourth Amendment Claim Against Officer Hachler

The Fourth Amendment protects against "unreasonable searches and seizures." Whren v. U.S., 517 U.S. 806 (1996). Plaintiffs' first claim alleges that Officer Hachler violated the Fourth Amendment by utilizing "unreasonable force in seizing, assaulting, and wrongfully arresting [Weaver], and in seizing and wrongfully detaining [the children]." Compl. ¶ 30. Defendants, however, ask the Court to dismiss this claim as asserted against Officer Hachler, arguing that he is entitled to qualified immunity. MTD at 4.

1    Qualified immunity provides "immunity from suit" rather

2    than just a defense to a liability.  Saucier v. Katz, 533 U.S.

3    194, 200-01 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511,

4    526 (1985)).  To determine whether Officer Hachler is entitled

5    to qualified immunity, the Court must evaluate: (1) whether the

6    facts, taken in the light most favorable to Plaintiffs, show

7    that Officer Hachler's conduct violated a constitutional right,

8    and (2) whether that right was "clearly established" at the time

9    of the incident.  Id. at 201.

10                    (i)  Violation of Constitutional Right

11    The Plaintiffs argue that determining whether Officer

12    Hachler violated their constitutional rights requires discovery.

13    Opp'n to MTD at 6 (citing Mitchell, 472 U.S. at 526).

14    Plaintiffs contend a decision of qualified immunity is therefore

15    "inappropriate at this juncture."  Opp'n to MTD at 6.  The Court

16    disagrees.

17    Mitchell states, "a defendant pleading qualified immunity

18    is entitled to dismissal before the commencement of discovery,"

19    unless plaintiffs' properly allege "a claim of violation of

20    clearly established law."  472 U.S. at 526.  The Court can

21    therefore grant qualified immunity at the motion to dismiss

22    stage, if it determines, based on the Complaint, that qualified

23    immunity is proper.  O'Brien v. Welty, 818 F.3d 920, 936 (9th

24    Cir. 2016).  Taking Plaintiffs' allegations as true, the Court

25    finds that Officer Hachler violated their constitutional rights

26    and is not entitled to qualified immunity under this prong.

27    Cal. Penal Code § 830.1 grants police officers the

28    authority to make off-duty arrests as set forth in Cal. Penal

1  Code § 836.  Johnson v. Lewis, 120 Cal. App. 4th 443, 454-55

2  (2004) (citing Inouye v. County of Los Angeles, 30 Cal. App. 4th

3  278, 284 (1994)).  Under Section 836, a police officer may make

4  a warrantless arrest if he has "probable cause to believe that a

5  person to be arrested has committed a public offense in the

6  officer's presence."  Cal. Penal Code § 836(a)(1).  The Fourth

7  Amendment grants officers this same authority to make

8  warrantless arrests.  Atwater v. City of Lago Vista, 532 U.S.

9  318, 354 (2001).

10      Plaintiffs do not dispute Officer Hachler's off-duty

11  authority.  And while they do argue "there are no facts within

12  the complaint under which probable cause for an arrest exists,"

13  Opp'n to MTD at 4, the crux of Plaintiffs' Fourth Amendment

14  claim rests on Officer Hachler's use of force, id. at 5.

15      Claims against law enforcement officials for use of

16  excessive force in the course of arrest are analyzed under the

17  Fourth Amendment's "objective reasonableness" standard.  Graham

18  v. Connor, 490 U.S. 386, 388 (1989).  "Determining whether the

19  force used to effect a particular seizure is reasonable under

20  the Fourth Amendment requires a careful balancing of the nature

21  and quality of the intrusion on the individual's Fourth

22  Amendment interests against the countervailing governmental

23  interests at stake."  Id. at 396.  The first factor in

24  determining whether the force used was excessive, is the

25  severity of the force applied.  Tekle v. U.S., 511 F.3d 839, 844

26  (2007).  The second, and "most important factor," is the need

27  for the force used.  Id.  This balancing test considers the

28  totality of the facts and circumstances, including: (1) the

1   severity of the crime at issue, (2) whether the suspect poses an

2   immediate threat to the safety of the officers or others, and

3   (3) whether he is actively resisting arrest or attempting to

4   evade arrest by flight.  Id.

5       Defendants concede that "the pointing of a gun at someone

6   may constitute excessive force, even if it does not cause

7   physical injury."  MTD at 8 (quoting Espinoza v. City & Cty. of

8   San Francisco, 598 F.3d 528, 544 (9th Cir. 2010)).  Therefore,

9   the severity of the force used was "a high level of force."

10  Espinoza, 598 F.3d at 538 ("pointing a loaded gun at a suspect,

11  employing the threat of deadly force, is use of a high level of

12  force.").  As for the "need for the force used," Plaintiffs'

13  allege that although Weaver had committed no crime, Officer

14  Hachler arrested him and used unreasonable force by pointing his

15  gun and "assault[ing] him physically."  Compl. ¶ 14.  Under

16  these facts, there was no need for force since (1) there was no

17  crime, (2) Weaver posed no immediate threat to anyone's safety,

18  (3) and he was not actively attempting to resist arrest or flee.

19  The Court therefore finds the Complaint properly alleges that

20  Officer Hachler violated Plaintiffs' constitutional rights by

21  using excessive force.

22                    (ii) Clearly Established Right

23      In determining whether a right is clearly established, the

24  dispositive inquiry is whether based on the law at the time of

25  the conduct, the officer had fair notice that his conduct was

26  unlawful.  Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018).  While

27  a case need not be "directly on point for a right to be clearly

28  established, existing precedent must have placed the statutory

                                  11

1  or constitutional question beyond debate." Id. Put simply,

2  qualified immunity "protects all but the plainly incompetent or

3  those who knowingly violate the law." Id.

4      Defendants argue that the law as it pertains to Officer

5  Hachler's conduct was not clearly established, because there was

6  no case stating that "an officer who is off-duty, in plain

7  clothes, in his own private vehicle," violates the Fourth

8  Amendment when displaying his firearm. MTD at 8. They argue

9  the only factual analogous case is a California Court of Appeals

10 case that held an off-duty arson investigator had the authority

11 to effectuate an arrest of a person who committed a traffic

12 violation in his presence. Id. (citing Johnson v. Lewis, 120

13 Cal. App. 4th 443, 453 (2004)). But the issue is not whether

14 Officer Hachler had the authority to arrest Weaver while off-

15 duty. Rather, the qualified immunity inquiry rests on whether

16 it was clearly established that it was unlawful for Officer

17 Hachler to point his gun at Weaver under these circumstances.

18     The Court finds Plaintiffs' reliance on Tekle to be

19 instructive. Opp'n to MTD at 5. In Tekle, the Ninth Circuit

20 found that although there was no "prior case specifically

21 prohibiting the use of handcuffs and weapons by more than twenty

22 officers to subdue an unarmed eleven-year-old who is not

23 suspected of any wrongdoing and is cooperating," the law was

24 nevertheless clearly established in that such conduct

25 constituted the use of excessive force. 511 F.3d at 847. The

26 court found it significant that the Ninth Circuit has "held

27 since 1984 that pointing a gun at a suspect's head can

28 constitute excessive force in this circuit." Id. The court

1  then cited cases holding as much and concluded that a
2  "reasonable officer would have known the force used against [the
3  plaintiff] violated his constitutional rights. . . even absent a
4  Ninth Circuit case presenting the same facts."  Id.

5      The instant case is also one of those obvious situations
6  where the "right's contours were sufficiently definite that any
7  reasonable official in the defendant's shoes would have
8  understood he was violating it."  Kisela, 138 S.Ct. at 1153
9  (citations omitted).  The facts as currently plead allege that
10 Weaver posed no threat, did not fail to comply with any orders,
11 and was not attempting to flee.  Officer Hachler simply drove up
12 behind Weaver and immediately got out of his car, pointing his
13 gun, without announcing that he was a police officer.  Contra
14 MTD at 9 (citing United States v. Thompson, 558 F.2d 522, 524
15 (9th Cir. 1977) ("A police officer attempting to make an
16 investigatory detention may properly display some force when it
17 becomes apparent that an individual will not otherwise
18 comply.)).  Under these facts, a reasonable officer would know
19 that it would be excessive force to point his gun while
20 effectuating the arrest.  Espinoza, 598 at 544.

21     While it is true that clearly established law cannot be
22 defined "at a high level of generality," Kisela, 138 S.Ct. at
23 1152, a case need not be "precisely on all fours on the facts
24 and law involved here," Tekle, 511 F.3d at 847.  And only "the
25 plainly incompetent" would assume that what is considered
26 unlawful force for an on-duty officer would not be considered
27 unlawful force for an off-duty officer.  The Court therefore
28 denies dismissal of this claim on the grounds of qualified

1    immunity.

2              b.   Fourteenth Amendment Claim

3         Under the Fourteenth Amendment's Due Process Clause, no

4    State may "deprive any person of life, liberty, or property,

5    without due process of law."  U.S. Const. Amend. XIV, § 2.  The

6    substantive due process guarantee "protects against government

7    power arbitrarily and oppressively exercised."  County of

8    Sacramento v. Lewis, 523 U.S. 833, 846 (1998)(citing Daniels v.

9    Williams, 474 U.S. 327, 331(1986)).  But "only the most

10   egregious official conduct can be said to be arbitrary in the

11   constitutional sense."  Id. (citation omitted).  The threshold

12   question is therefore "whether the behavior of the governmental

13   officer is so egregious, so outrageous, that it may fairly be

14   said to shock the contemporary conscience."  Id. at 847 n.8.

15        Plaintiffs argue Officer Hachler's actions on May 25, 2019

16   meet this threshold.  Opp'n to MTD at 6.  Defendants argue, on

17   the other hand, that this was "a daily routine occurrence . . .

18   a traffic stop and a resultant arrest of a suspected offender."

19   MTD at 11.  Plaintiffs contend that this argument is offensive.

20   Opp'n to MTD at 6.  They state that "[a]ll citizens, including

21   Black Americans, have a fundamental right, not to be falsely

22   accused of violent felonies, [and] not to be arrested at the end

23   of a gun barrel in front of their children[.]" Id.

24        The Court does not take lightly that "[o]ur country is now

25   in the midst of a serious examination of the violations of due

26   process and equal protection rights of Black Americans."  Id.

27   The Court recognizes that "the burden of aggressive and

28   intrusive police action falls disproportionately on African-

                              14

1  American . . . males." <u>Washington v. Lambert</u>, 98 F.3d 1181,
2  1187 (1996).

3      But under a substantive due process inquiry, the Court must
4  focus only on Plaintiffs' substantive due process rights.  And
5  while it may shock the Country's conscience "to have Black
6  Americans singularly threatened with grave bodily injury and
7  even death, during routine traffic stops, by white police who
8  are charged to protect and serve all Americans," Opp'n to MTD at
9  6, Officer Hachler's behavior does not shock the conscience by
10 substantive due process standards.

11     Only something as egregious as forcibly pumping a suspect's
12 stomach "offends due process as conduct 'that shocks the
13 conscience' and violates the 'decencies of civilized conduct.'"
14 <u>Rochin v. California</u>, 324 U.S. 165, 172-73 (1952).  The Supreme
15 Court has adhered to that benchmark since 1952.  <u>Lewis</u>, 523 U.S.
16 at 846-847.  This standard, therefore, does not impose liability
17 "whenever someone cloaked with state authority causes harm."
18 <u>Id.</u> at 848.  For that reason, even the wrongful arrest of a
19 father, subjected to verbal abuse, in front of his four and
20 eight-year-old children has been considered not to "shock the
21 conscience."  <u>Rosenbaum v. Washoe County</u>, 663 F.3d 1071, 1081
22 (2011).  Likewise, Officer Hachler's actions do not rise to the
23 level of a substantive due process violation.

24     Based on this binding precedent, the Court DISMISSES
25 Plaintiffs' Fourteenth Amendment claim WITH PREJUDICE.
26 ///
27 ///
28 ///

1

c.   Monell Claim

2      Municipalities can be sued directly under 42 U.S.C. § 1983

3 for an unconstitutional custom, policy, or practice.  Monell v.

4 Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691

5 (2018).  A Monell claim can be based on three possible theories

6 by alleging that: (1) official policies or established customs

7 inflicted the alleged constitutional injury; (2) omissions or

8 failures to act reflected a local government policy of

9 deliberate indifference to the constitutional rights at issue;

10 or (3) that a city employee with final policy-making authority

11 ratified a subordinates unconstitutional act.  Clouthier v. Cty.

12 of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010),

13 overruled on other grounds by Castro v. Cty. of Los Angeles, 833

14 F.3d 1060 (9th Cir. 2016).

15      Plaintiffs argue they "have pled municipal liability under

16 all three theories."  Opp'n to MTD at 7.  Defendants seek to

17 dismiss Plaintiffs' claim in its entirety.  MTD at 13.  However,

18 Defendants' arguments run beyond the Court's page limitations

19 for both their memorandum in support of the motion to dismiss

20 and their reply brief.  As described in the issuance of

21 sanctions below, the Court will only address the arguments

22 Defendants made within the page limits.

23

(i) Stockton Police Department

24      As an initial matter, Defendants argue that the Stockton

25 Police Department should be dismissed because a "municipal

26 department is not generally considered a 'person' within the

27 meaning of Section 1983."  MTD at 2.  Moreover, the City of

28 Stockton is already named, which makes this duplicative.  Id.

16

1   Defendants rely on <u>Vance v. County of Santa Clara</u>, which found

2   that suing the Santa Clara Department of Corrections was

3   improper because "the term 'persons' does not encompass

4   municipal departments."  98 F. Supp. 993 (N.D. Cal. 1996).

5       Plaintiffs, however, rely on a more recent case in the

6   Ninth Circuit finding that the Los Angeles County Sheriff's

7   Department was subject to liability under Section 1983.  <u>Streit</u>

8   <u>v. County of Los Angeles</u>, 236 F.3d 552, 565-67 (9th Cir. 2001);

9   <u>see also</u> <u>Karim-Panahi v. Los Angeles</u>, 839 F.2d 621, 624 n. 2

10  (9th Cir. 1988)("Municipal police departments . . . can be sued

11  in federal court for alleged civil rights violations.").  The

12  Court is bound by this precedent.  Defendants' request to

13  dismiss the Stockton Police Department is therefore DENIED.

14                    (ii) <u>Custom or Policy</u>

15      Absent a formal governmental policy, a plaintiff must show

16  a "longstanding practice or custom which constitutes the

17  standard operating procedure of the local government entity."

18  <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996) (citations

19  omitted).  Liability for an improper custom "cannot be

20  predicated on isolated or sporadic events."  <u>Id.</u>  Rather, "it

21  must be founded upon practices of sufficient duration, frequency

22  and consistency that the conduct has become a traditional method

23  of carrying out policy."  <u>Id.</u>

24      Plaintiffs allege that the Stockton Police Department has a

25  custom of not terminating officers "for unreasonable or

26  excessive force."  Opp'n to MTD at 7.  They also allege that the

27  Stockton Police Department has a custom of not considering "the

28  drawing of a gun and pointing it at a civilian to be a use of

                                17

1   force, so that no use of force report is required." Id. at 7-8.

2       But Defendants argue that although Plaintiffs "recite to

3   numerous news articles, unsworn allegations and settlements,"

4   and cases in their Complaint, "none of those alleged incidents

5   bear any resemblance whatsoever to the incident [presently]

6   before the Court." MTD at 14. They therefore contend that

7   "none of these incidents demonstrate the precise link required

8   between the conduct that put the municipality on notice and the

9   alleged policy deficiency." Id. In other words, Defendants

10  argue Plaintiffs "have not pled sufficient facts." Id. at 13.

11      Previously, the Ninth Circuit interpreted claims of

12  municipal liability under Section 1983 "based on nothing more

13  than a bare allegation that the individual officers' conduct

14  conformed to official policy, custom, or practice," as

15  "sufficient to withstand a motion to dismiss." AE ex rel.

16  Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012).

17  It has since changed course and adopted the same two principals

18  common to 12(b)(6) motions. Id. First, "to be entitled to the

19  presumption of truth, allegations in a complaint . . . may not

20  simply recite the elements of a cause of action but must contain

21  sufficient allegations of underlying facts to give fair notice

22  and to enable the opposing party to defend itself effectively."

23  Id. (quoting Starr v. Bacca, 652 F.3d 1202, 1216 (9th Cir.

24  2011)). Second, those allegations taken as true, "must

25  plausibly suggest an entitlement to relief, such that it is not

26  unfair to require the opposing party to be subjected to the

27  expense of discovery and continued litigation." Id. The Court

28  finds Plaintiffs' have met this pleading standard.

18

1    First, Plaintiffs "make detailed factual allegations that

2 go well beyond reciting the elements of a [Monell Claim]."

3 Starr, 652 F.3d at 1217.  Plaintiffs specifically allege fifteen

4 incidents in which officers of the Stockton Police Department

5 used excessive force, Compl. ¶ 24(i), including one incident

6 that involves Hachler himself using excessive force against

7 another individual.  Id. ¶ 25(b).  These lawsuits were filed "to

8 show Defendants' practice of allowing excessive force to occur

9 and continue."  Opp'n to MTD at 8.  This Court has previously

10 found that similar allegations are "'sufficiently detailed,' to

11 give Defendants 'fair notice' granting them the opportunity 'to

12 defend [themselves] effectively."  McCoy v. City of Vallejo, No.

13 2:19-cv-001191-JAM-CKD, 2020 WL 374356, at * 3(E.D. Cal. January

14 23, 2020)(quoting Starr, 652 F.3d at 1217 and finding twenty-one

15 allegations of the Vallejo Police Department's use of excessive

16 force to be sufficiently detailed for purpose of demonstrating

17 the city's "awareness of this pattern").  Plaintiffs'

18 allegations are therefore "entitled to the presumption of

19 truth."  Id.

20    Second, these allegations plausibly suggest that Defendants

21 were aware that "the department as a whole had [excessive force]

22 issues."  Opp'n to MTD at 8.  And "[d]efendants have not

23 provided an 'alternative explanation' that would require the

24 Court to conclude Plaintiffs' explanation 'is not a plausible

25 conclusion'."  McCoy, 2020 WL 374356, at *3 (quoting Starr, 652

26 F.3d at 1216).  Instead, Defendants simply argue "the incidents

27 they claim show a custom or practice . . . are all factually

28 dissimilar and temporally disconnected."  MTD at 15.  But the

1   incidents do not need to be identical to establish plausibility

2   of a custom.  A custom can be "inferred from . . . evidence of

3   repeated constitutional violations for which the errant

4   municipal officers were not discharged or reprimanded."  Opp'n

5   to MTD at 7; see also McCoy, 2020 WL 374356, at *2.  And such an

6   inference can be made from the evidence Plaintiffs' plead in

7   their Complaint.  Accordingly, the Court finds the allegations

8   in Plaintiffs' Complaint satisfy the requisite pleading standard

9   as to this theory.

10                  (iii)      Failure to Train

11       Failure to train can only serve as the basis for Section

12   1983 liability when it "amounts to deliberate indifference to

13   the rights of persons with whom the police come into contact."

14   City of Canton, 489 U.S. 378, 388 (1989).

15       Defendants argue that Plaintiffs have failed "to identify

16   or state how or in what way the City's Police Department failed

17   to properly train Officer Hachler."  MTD at 15.  The rest of

18   their arguments, however, are beyond the Court's page limits in

19   both of their briefs.  Accordingly, based on this argument alone

20   the Court disagrees with Defendants.

21       Plaintiffs did identify how the Stockton Police Department

22   failed to properly train Officer Hachler.  For instance,

23   Plaintiffs alleged that Officer Hachler's actions "were

24   inconsistent, uncompliant, or not conforming [with] mandatory

25   training provided by the Commission on Peace Officer Standards

26   and Training."  Compl. ¶ 27(c).  Plaintiffs' also listed

27   "multiple cases of the use of excessive force by the Stockton

28   Police . . . where guns were pulled but not fired."  Opp'n to

                                  20

1   MTD at 8 (citing Compl. ¶ 24(i)).  Moreover, Plaintiffs' allege

2   that even though pointing a gun constitutes excessive force, the

3   City of Stockton did not train nor require officers to consider

4   this a use of force or file use of force reports.  Id. at 9.  By

5   turning a "blind eye" on this issue, Plaintiffs allege that the

6   City of Stockton was deliberately indifferent.  Id.

7        At this stage, "Plaintiff's explanation [need not] be true

8   or even probable," rather "[t]he factual allegations of the

9   complaint need only 'plausibly suggest an entitlement to

10  relief.'"  McCoy, 2020 WL 374356, at *3 (quoting Starr, 652 F.3d

11  at 1217).  The Court finds Plaintiffs allegations make such a

12  suggestion.  The Court therefore DENIES dismissal of the Monell

13  claim under this theory and under the other theories alleged

14  since they went unchallenged within the page limits.

15            d.   Article 1 § 7 of the California Constitution

16       Plaintiffs' third claim alleges Defendants' violated their

17  right of equal protection and due process under Article I

18  Section 7 of the California Constitution.  Compl. ¶ 41-48.  That

19  section provides, "[a] person may not be deprived of life,

20  liberty, or property without due process of law."  Article 1

21  § 7(a).  However, this provision does not by itself "afford a

22  right to seek damages to remedy the asserted violation of due

23  process liberty interest."  Katzberg v. Regents of University of

24  California, 29 Cal. 4th 300, 329 (2002).  For this reason,

25  Defendants' argue that Plaintiffs' claim is not legally

26  cognizable and therefore fails.  MTD at 13.

27  ///

28  ///

1   Plaintiffs, on the other hand, argue they are requesting

2   declaratory and injunctive relief—not damages.  Opp'n to MTD at

3   10-11.  This contradicts Plaintiffs' Complaint, which also seeks

4   "compensatory damages" and "punitive damages" for Defendants'

5   alleged violation of Article 1 Section 7.  Compl. ¶ 48.

6   Therefore, this claim is DISMISSED WITH PREJUDICE, but only to

7   the extent it seeks damages.

8            3.   Sanctions

9   The Court need not consider the rest of the arguments

10  raised in Defendants' motion to dismiss and reply briefs because

11  they violate the Court's page limits.  The Court's Order RE

12  Filing Requirements ("Order") clearly states that for all

13  motions, other than those under Federal Rule of Civil Procedure

14  56 and 65, memoranda of law in support are limited to fifteen

15  (15) pages and reply memoranda are limited to (5) pages.  Order

16  at 1.  The Order also states that the Court does not consider

17  "any arguments made past the page limit."  Id.

18  Moreover, "violation of this Order [results] in monetary

19  sanctions [] against counsel in the amount of $50.00 per page

20  [past the page limit]."  Id.  Defendants' memoranda of law in

21  support of their motion to dismiss is 19 pages (4 pages past the

22  limit) and their reply is 10 pages (5 pages past the limit).

23  Defendants' counsel must therefore send a check payable to the

24  Clerk for the Eastern District of California for $450.00, no

25  later than seven days from the date of this order.

26  ///

27  ///

28  ///

22

1                              III.   ORDER

2          For the reasons set forth above, the Court DENIES

3    Defendants' Motion to Strike.   The Court GRANTS Defendants Motion

4    to Dismiss Plaintiffs' Substantive Due Process Claim WITH

5    PREJUDICE and DENIES Defendants' Motion to Dismiss as to all

6    other claims.

7          IT IS SO ORDERED.

8    Dated:   September 25, 2020

9                                          _____
                                           JOHN A. MENDEZ,
10                                         UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    23